J. Irwin Shapiro, J.
On January 27, 1969 defendant was indicted for the crime of possessing a loaded pistol on January 23, 1969 at the- Kennedy International Airport. The crime came to light when defendant, who was about to board a plane bound for California, was arrested by an agent of the Federal Bureau of Investigation. Subsequently, three notices were served upon defendant by the District Attorney of Kings County pursuant to former section 823 of the Code of Criminal Procedure* informing defendant, respectively, (1) that an eavesdropping warrant had issued on November 21, 1968 authorizing interception of conversations on his telephone from November 22 to December 11, 1968; (2) that a similar warrant had issued on December 24, 1968 authorizing the same interceptions from December 26, 1968 to March 14, 1969; and (3) that an eavesdropping warrant had issued on December 24, 1968 authorizing interceptions of conversations in his apartment in Brooklyn from December 26, 1968 to March 15, 1969. Each notice also stated that during the periods of authorized eavesdropping interceptions, conversations had been overheard.
Based upon the aforesaid notices (copies of which are annexed to the moving papers) defendant makes this motion for an order directing the disclosure to him of all logs, records, and memoranda of electronic surveillance made pursuant to the *421 eavesdropping warrants set forth in the three notices served upon him. Upon the same basis, defendant also demands, ‘ ‘ under the authority of section 823 of the Code of Criminal Procedure,” that he be furnished with certified copies of the applications made by the People which formed the basis for the issuance of the three eavesdropping orders set forth in the aforesaid notices and ‘ ‘ any and all existing applications for renewals, amendments and returns required by statute.”
Upon a different basis (hereinafter discussed) defendant seeks, in addition, disclosure of “ any and all logs, records and memoranda of any electronic surveillance or other mechanical means of overhearing conversations made not pursuant to statutes or made by Federal or other authorities not within, the jurisdictional authority of New York State’s Code of Criminal Procedure directed at defendant or any unindicted alleged co-conspirator herein or conducted at or upon or directed at the premises of defendant or unindicted alleged co-conspirator herein,” as well as the name and business address of any person who conducted any of the surveillance above mentioned which were “ not the subject of any log, record or memorandum. ’ ’
Defendant also seeks an evidentiary pretrial hearing to determine whether the People have turned over .all records of electronic surveillance and the extent to which such surveillance tainted the evidence upon which the indictment in this matter was based and which the People intend to use at the trial, and for a dismissal of the indictment in the event that it should be disclosed at such hearing that the indictment was the product of illegally obtained evidence.
The principal questions to be answered by this motion are (1) the extent to which, if at all, the prosecution is required to divulge to a defendant the conversations obtained from electronic surveillance of his telephone or his home or of other locations where such conversations were intercepted, and (2) whether the papers upon which warrants for such surveillance were issued must be furnished to him.
DISCLOSURE OF CONVERSATIONS OBTAINED BY ELECTRONIC SURVEILLANCE UNDER THE WARRANTS OF NOVEMBER 21 AND DECEMBER 24, 1968.
A person whose telephone or home has been subjected to electronic surveillance pursuant to a warrant issued by a court of competent jurisdiction does not have an absolute right to a disclosure of intercepted conversations obtained thereby. A disclosure is not constitutionally mandated where such sur *422 veillance is lawfully made pursuant to a properly issued warrant. In Giordano v. United States (394 U. S. 310) the court so determined when it held that where cases were remanded to the District Court to determine, in conformity with Alderman v. United States (394 U. S. 165), whether surveillance was illegal, ‘ ‘ a finding by the District Court that surveillance was lawful would make disclosure and further proceedings unnecessary ” (p. 313). To make its meaning even clearer, if need be, Mr. Justice Stewart in a concurring opinion in Giordano, observed the converse as follows (p. 313): “As we made explicit in Alderman, Butenko, and Ivanov, the requirement that certain products of governmental electronic surveillance be turned over to defense counsel was expressly limited to situations where the surveillance had violated the Fourth Amendment.”
Since there is a presumption that the warrants in this matter were properly and legally issued (see, e.g., People v. Alfinito, 16 N Y 2d 181, 186; also, People v. Childers, 54 Misc 2d 752, 753), it follows, everything else being equal, that the electronic surveillance had pursuant thereto was legal and did not violate defendant’s Fourth Amendment rights. Therefore, in the present state of the record, disclosure to defendant of the product (the conversations) of that surveillance is not required as a matter of right.
That does not mean, however, that disclosure to a defendant of intercepted communications is absolutely and without exception interdicted, although obtained pursuant to a lawful warrant. Subdivision 3 of section 822 of the Code of Criminal Procedure (enacted by chapter 1147 of the Laws of 1969, eff. June 25, 1969), which provides that notice of the issuance of an eavesdropping warrant shall be given to the person named in the warrant (cf. former section 823 of the Code of Criminal Procedure, repealed by chapter 1147 of the Laws of 1969), also provides that: “ The justice, upon the filing of a motion by any person served with such notice, may in his discretion, make available to such person or his counsel for inspection such portions of the intercepted communications, applications and warrants as the justice determines to be in the interest of justice.” To carry out the purpose and intent of this statute, and to be able properly to exercise the discretion thus vested in the court, I procured and thoroughly examined the eavesdropping warrants involved here and the voluminous papers upon which they were issued. Such examination has persuaded me that there was ample basis for the issuance of the warrants. *423 Equally important in this context, and in determining whether proper judicial discretion requires the disclosure of the intercepted conversations, is whether the public safety and welfare may he harmed by revealing those conversations. I have concluded that because, except for one small instance, the interceptions are not relevant to the charge in this case and because the public rights may be endangered, disclosure should be denied. I therefore refuse, upon ¡the present state of the record, to exercise the discretion granted to me by the statute to make the intercepted communications available to the defendant.
DISCLOSURE OF THE AFFIDAVITS AND THE OTHER PAPERS UPON" WHICH WARRANTS WERE ISSUED.
Defendant’s demand that he he furnished with copies of the papers upon which the eavesdropping warrants were issued is ‘ ‘ made under the authority of section 823 of the Code of Criminal'Procedure.” The statute referred to by defendant is the one repealed and replaced by section 822. There is nothing in the repealed statute expressly requiring that the application upon which an eavesdropping warrant is issued be turned over to a defendant. As above noted, section 822 of the newly enacted statute does vest discretion in the court in that regard. However, here there is no constitutional room for the exercise of judicial discretion to deny the disclosure to defendant of the applications upon which the eavesdropping warrants issued, for in his affidavit the District Attorney admits that he has 11 investigated the source of information leading to the arrest and indictment of defendant and learned that a part of the information leading to the defendant’s arrest did, in fact, stem from eavesdropping.” In such a situation a defendant is entitled to he furnished with all of the papers upon which the warrant issued so that he may, if so advised, attack their legal sufficiency for the issuance of the warrant, and thus pave the way for a motion to suppress any evidence obtained by such eavesdroppings which served as the basis of the charge in the indictment or which led to such evidence. (People v. McCall, 17 N Y 2d 152, 159; People v. Rizzo, 50 Misc 2d 458, 460; also, see, People v. Munger, 24 N Y 2d 445, 453; People v. Morhouse, 21 N Y 2d 66, 77; Kolod v. United States, 390 U. S. 136.)
The rationale of this requirement is apparent. As the court observed in McCall (p. 159): u A refusal to permit a defendant to examine the facts upon which his privacy has been broken into amounts to saying that any search warrant or order for interception is all right if a Judge has seen fit to sign it.” Moreover, since 1 ‘ the [Fourth] Amendment now affords pro-
*424 tection against the uninvited ear,” and oral statements, if illegally overheard, and their fruits are also .subject to suppression (Alderman v. United States, 394 U. S. 165, 171; Katz v. United States, 389 U. S. 347, 351-352), the requirement that a defendant be furnished with a copy of the application upon which an eavesdropping warrant issued is, just as in the case of a search warrant, of constitutional dimension.
The District Attorney opposes any disclosure whatever to the defendant of the papers upon which the warrants issued upon the ground that the surveillance here was legal and upon the further ground that the identity of an informer should not be revealed because ‘ ‘ this would lead to great danger for the informant with a resulting reluctance to cooperate with law-enforcement authorities,” and he suggests that this court examine the applications for sufficiency ex parte in camera.
Neither basis is sufficient to neutralize the constitutional requirement of disclosure of the applications. In People v. Munger (24 N Y 2d 445, 453, supra) the court said: “ The District Attorney suggests that we now ex parte determine whether the orders were improperly obtained, and, if they were, examine the recordings to determine whether any evidence at the trial could possibly have been obtained from these taps. Even were this court prepared to undertake such a huge task as reviewing the legality of wiretapping orders ex parte — and we have already indicated in the Morhouse case that we would not (21 N Y 2d, supra, p. 78) — such a procedure could not survive constitutional attack. In fact, the Supreme Court’s recent decision in Alderman v. United States (394 U. S. 165) puts an end to any doubts on this score. (See, also, Kolod v. United States, 390 U. S. 136.) ”
The problem presented in this case wag clearly and cogently answered in Alderman v. United States (394 U. S. 165, supra). There, on the basis of the defendant’s contention that certain electronic surveillance by the Government violated his Fourth Amendment rights, the Supreme Court remanded the matter to the District Court to determine whether any of the prosecution’s evidence was the product of illegal surveillance. The Government urged that in making this determination the surveillance records should first be subjected to in camera inspection by the Trial Judge who would then turn over to the petitioners or their counsel only those materials “ arguably relevant” to the prosecution. In rejecting the Government’s proposal and in holding that an ex parte in camera inspection of the surveillance records would not satisfy the constitutional *425 requirement of an adversary proceeding to determine whether there had been a violation of the right of privacy under the Fourth Amendment, .the court said (pp. 183-184): “ Adversary proceedings are a major aspect of our system of criminal justice. Their superiority as a means for attaining justice in a given case is nowhere more evident than in those cases, such as the ones at bar, where an issue must be decided on the basis of a large volume of factual materials, and after consideration of the many and subtle interrelationships which may exist among the facts reflected by these records. As the need for adversary inquiry is increased by the complexity of the issues presented for adjudication, and by the consequent inadequacy of ex parte procedures as a means for their accurate resolution, the displacement of well-informed advocacy necessarily becomes less justifiable. Adversary proceedings will not magically eliminate all error, but they will substantially reduce its incidence by guarding against the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny which the Fourth Amendment exclusionary rule demands.”
The fact that disclosure of the applications for the surveillance warrants may imperil an informant and result in a reluctance on his part — or even on the part of informers generally — to co-operate with law-enforcement authorities is not an adequate basis to deny a defendant his constitutional right to disclosure. (People v. Malinsky, 15 N Y 2d 86, 92; Roviaro v. United States, 353 U. S. 53, 61.) In such case, the right of the defendant is paramount to .that of the prosecution, and the prosecution is put to the unalterable option of making disclosure or not proceeding with the prosecution. (Alderman v. United States, supra, at p. 184.) This has been an abiding principle even in cases involving the national security. In United States v. Coplon (185 F. 2d 629, 638) the late Chief Judge Learned Hand of the Second Circuit, with his characteristic clarity and directness, said: “We agree that there may be evidence — “state secrets’ — to divulge which will imperil ‘ national security ’; and which the Government cannot, and should not, be required to divulge. Solus rei publicae suprema lex. The immunity from disclosure -of the names or statements of informers is an instance of the same doctrine. This privilege will often impose a grievous hardship, for it may deprive parties to civil actions, or even to criminal prosecutions of power to assert their rights or to defend themselves. That is *426 a consequence of any evidentiary privilege. It is, however, one thing to allow the privileged person to suppress the evidence, and, tolo coelo, another thing .to allow him to fill a gap in his own evidence hy recourse to what he suppresses. In United States v. Andolschek [142 F. 2d 503, 506] we held that, when the Government chose to prosecute an individual for crime', it was not free to deny him the right to meet the case made against him by introducing relevant documents, otherwise privileged. We said that the prosecution must decide whether the public prejudice of allowing the crime to go unpunished was greater than the disclosure of such ‘ state secrets ’ as might be relevant to the defence.”
It is therefore determined that if the People desire to proceed with his prosecution, they must furnish the defendant with the warrants in question and all of the papers upon which they were obtained. I so hold as a matter of law and not in the exercise of discretion.
DISCLOSURE OF INTERCEPTIONS BT ELECTRONIC SURVEILLANCE MADE BY FEDERAL OR OTHER AUTHORITIES NOT UNDER EITHER FEDERAL OR STATE LAW DIRECTED AT DEFENDANT OR ANY UNINDICTED ALLEGED COCONSPIRATOR.
No adequate basis is presented for this sweeping request. The sole support for this request in the moving papers is the affidavit of defendant’s attorney, in which he alleges conclusorily, upon information .and belief, with no showing of fact to support it, that the District Attorney and the New York City Police possess wiretap and bugging records “ derived from unlawful eavesdropping conducted by the Federal Bureau of Investigation * * * as part of an investigation of defendant and another ’ ’. This, of course, is not sufficient to establish that there was such eavesdropping surveillance and is clearly insufficient to warrant ordering the disclosure of such records (as allegedly illegally obtained) if they are in fact in existence.
The District Attorney, in his answering affidavit, states that in investigating the facts concerning the arrest and indictment of defendant he learned that part of the information leading thereto .stemmed from eavesdropping. Seizing upon this statement, there was submitted on defendant’s behalf a reply affidavit made by his attorney in which he alleges, in essence, that: Bobby G. Seale, who is chairman of the Black Panther Party and operates out of Oakland, California, conversed almost daily with defendant, who was defense captain of that party *427 since the formation of its New York chapter in June, 1968; that in the prosecution of Bobby Seale in the case of United States v. Bellinger, in a Federal Court in Illinois, the Government, in response to a defense motion similar to the instant one, admitted, inter alia, that various electronic devices were used to intercept oral and wire communications of Seale; that the Government .admitted that some of such surveillance was illegal, but contended that other surveillance was legal; that since defendant and Seale conversed frequently, ‘1 it is unmistakably clear that Ford (.this defendant) was a party to conversations intercepted by agents of the Federal government55; and that it is clear that agents of the Federal Government were involved in obtaining the indictment against defendant since agents of the Federal Bureau of Investigation arrested him.
These allegations by defendant’s attorney are manifestly insufficient upon their face to establish that Federal electronic surveillance, or any electronic surveillance other than that directed under the above-mentioned warrants issued to the District Attorney of Kings County, provided any evidence or leads to evidence resulting in defendant’s arrest and indictment. Firstly, the allegation regarding a similar motion in the Federal Court in Illinois is much too general to warrant the conclusions drawn. There is no specific detail as to the period it was claimed in that motion that electronic surveillance of Seale was in effect, nor is the disposition of that motion given. Moreover, the statement that the Government admitted that some of such surveillance was illegal but contended that other surveillance was legal without specifying which was admitted ¡to have been illegal is not relevant to, nor of any aid upon, this application. So, too, the assertion that since defendant and Seale conversed frequently over the telephone makes it “ unmistakably clear that Ford was a party to conversations intercepted by agents of the Federal government” is nothing more than a gratuitous conclusion unsupported by any factual demonstration.
In any event, apart from the innate inadequacy of defense counsel’s allegations, affidavits by the Assistant District Attorney, a New York City police officer, and the Federal Bureau of Investigation agent, who arrested the defendant, establish that none of the information leading to defendant’s arrest and his prosecution stemmed from any electronic surveillance other than that based on the eavesdropping warrants issued to the District Attorney of Kings County.
*428 Although the foregoing is dispositive of this phase of defendant’s application, which seeks a disclosure of the product of electronic surveillance ‘ ‘ made not pursuant to statutes or made by Federal” authorities, it may not be amiss to note that in any event defendant would not be entitled to the disclosure of electronic surveillance of an unindicted coconspirator if defendant’s conversations were not overheard (see Goldstein v. United States, 316 U. S. 114) even if such electronic surveillance were unlawful. In such case, since defendant would have no standing to suppress the illegally obtained evidence (see, e.g., People v. Cefaro, 45 Misc 2d 990, affd. 21 N Y 2d 252; also, see, People v. Lane, 10 N Y 2d 347, 353; People v. De Vivo, 23 A D 2d 753; cf. People v. Cardaio, 30 A D 2d 843, affd. 24 N Y 2d 988), he has no standing to secure a disclosure of such evidence (Alderman v. United States, 394 U. S. 165, 171-174, supra). In Alderman, it was said (p. 174): “Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. * * * There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party.”
It follows from what has been said that this motion is granted to .the extent of directing that defendant or his attorney be furnished with copies of the applications made by the District Attorney of Kings County which formed the basis for the issuance by the Supreme Court of Kings County of the following eavesdropping warrants: one dated November 21, 1968 authorizing interception of telephone conversations on telephone instrument 643-0625 for the period commencing on November 22, 1968 and terminating on December 11, 1968; a similar one dated December 24, 1968 for .the same telephone instrument for .the period from December 26, 1968 to March 15, 1969; and one dated December 24, 1968 authorizing interception of conversations at apartment 3B, 115 South Elliott Place, Brooklyn, New York, for the period commencing December 26, 1968 and terminating on March 15, 1969. In all other respects this motion is denied, without prejudice, however, to renewal for a disclosure of the logs, records, and memoranda of all electronic surveillance made pursuant to the aforesaid eavesdropping orders in the event that it shall be judicially determined that such warrants were illegally issued.

 Former subdivision 1 of section 823 of the Code of Criminal Procedure was repealed by chapter 1147 of the Laws of 1969 (eff. June 25, 1969) and was re-enacted, with changes not here material, as subdivision 3 of section 822 of the Code of Criminal Procedure.