Allen Murray Myers, J.
The defendants move to suppress ' an eavesdropping warrant issued ¡by Justice Brust on May 15, 1970, on the ground that the affidavit to Detective Marsenison submitted in support of the wiretap order was insufficient to provide probable cause to believe: (1) that a particularly described person is committing, has committed or is about to commit a particular designated offense; (2) that particular communications concerning such offense will be obtained through eavesdropping; (3) that the telephone to be tapped is being used or is about to be used in connection with the commission of such offense or commonly used by such person. Defendants have also urged every other ground permitted by statute and case law including perjury or misrepresentation of the affiant to the issuing Judge (People v. Solomine, 18 N Y 2d 477); that there was no showing that normal investigative procedures had been tried and failed, or reasonably appeared unlikely to succeed if tried or were too dangerous to employ; improper execution of the warrant, and invalidity of the warrant because of the omission of some of the provisions mandated by section 700.30 of the Criminal Procedure Law.
The Fourth Amendment prohibition against unreasonable searches and seizures applies to conversations as well as to tangible property (Katz v. United States, 389 U. S. 347). Electronic eavesdropping of conversations is permissible if pursuant to a warrant (Katz v. United States, supra) issued in conformity with circumscribed standards (Berger v. New York, 388 U. S. 41). The statute authorizing such eavesdropping and establishing the standards is title III of the Omnibus Crime Control and Safe .Streets Act of 1968 (U. S. Code, tit. 18, §§ 2510 through 2520). As a result of this enabling statute, New York enacted sections 813-j to 825 of the Code of Criminal Procedure, which have now been superseded by article 700 of the Criminal Procedure Law without any change in substance as far as the issues in this case are concerned. In fact, the pertinent parts of all three statutes are identical. Therefore, no injustice will '■ be done by application of the procedure set forth in the Criminal *1055 Procedure Law and such application is permissible (CPL 1.10, subd. 2).
The Assistant District Attorney has conceded the standing of all the defendants to controvert both the eavesdropping and search warrants.
As with all motions to suppress, while the defendant has the ultimate burden of proof, the People have the burden of coming forward with proof of the legality of the police conduct in the first instance (People v. Berrios, 28 N Y 2d 361, 367). There is a presumption that Justice Bbtjst made his finding of probable cause to believe that evidence of violations of the narcotics laws (Penal Law, art. 220) may be obtained by tapping a telephone bearing number FA 5-7516 listed in the name of Marvin Wilson but located in the residence of and used by Shirley Brown (defendant Gloria Johnson) upon impartial judicial consideration of the facts disclosed to him (People v. Sher, 68 Misc 2d 917) and that the warrant was properly issued (People v. Ford, 61 Misc 2d 419, 422).
The affidavit in support of the eavesdropping warrant herein is based on information from an undisclosed informant. Such an affidavit based entirely on hearsay is permissible provided that there is a substantial basis for crediting the hearsay (United States v. Harris, 403 U. S. 573; Jones v. United States, 362 U. S. 257). The test is whether the information is reasonably trustworthy and is sufficient to permit men of reasonable caution to believe that an offense had been and is being committed or as in this case that information that a felony will be committed can only be obtained through a wiretap (Draper v. United States, 358 U. S. 307, Carroll v. United States, 267 U. S. 132).
The information imparted by the informant was that Shirley Brown, a female Negress, about 24 years old, 5 feet, 3 inches tall, weighing about 100 pounds, occupied the second floor and basement apartments at 4434 Baychester Avenue, Bronx, N. Y. Her telephone — FA 5-7516 — was listed in the name of Marvin Wilson. During 1969, the informant had been in the premises on numerous occasions and saw large quantities of narcotics in the possession of Shirley Brown and her common-law husband, Louis Bailey. On many of these occasions the informant saw Shirley Brown, Louis Bailey and an unknown Negress prepare the narcotics for distribution, and gave a detailed description about-how this was done, adding that Shirley Brown was highly expert at it.
In November, 1969, Louis Bailey was arrested and incarcerated for a violation of parole and thereafter narcotics were *1056 rarely prepared for distribution at 4434 Baychester Avenue. The operation was removed to various unknown locations. Shirley Brown, a narcotics cutting and packaging operator known as a “ plant girl ” worked for Hector G-. Henry and Jerry Thomas. The informant heard Shirley Brown speak to these men on the FA 5-7516 telephone on at least five occasions concerning meeting arrangements for purposes of cutting and packaging narcotics. During the week of April 5, 1970, the informant was present at 4434 Baychester Avenue when Shirley Brown made and received several telephone calls over FA 5-7516, relating to meeting arrangements and locations of processing plants and facts surrounding the arrival of heroin shipments. A narcotics operation was to take place at Shirley Brown’s residence on May 2, 1970. During these narcotic processing operations, Hector G-. Henry would act as a lookout by going out to the street at frequent intervals to tinker with his car.
.Shirley Brown, Gloria Jackson with whom Shirley Brown was frequently seen, Hector G. Henry and Jerry Thomas all were known to the police and had records of arrest for narcotics violations. Gloria Jackson and Shirley Brown were arrested several times when narcotics mills were raided.
From the information received, the police could reasonably conclude that Shirley Brown was a plant girl in the employ of Hector G. Henry and Jerry Thomas. The informant’s information was buttressed by Detective Marsenison’s observation of the informant and Shirley Brown in conversation on several occasions; the informant, in conversation with Hector G. Henry on one occasion and the observation of Hector G. Henry, on May 2, 1970, between 1:00 a.m. and 5:00 a.m. acting as lookout by constantly going in and out of 4434 Baychester Avenue to tinker with his car while the cutting operation mentioned by the informant was allegedly taking place.
The reliability of the informant was further buttressed by the accuracy of the description of the cutting operations and the fact that the informant admitted to being present on several occasions when large quantities of narcotics were present, in Shirley Brown’s house. Although this is not as strong an admission against interest as in United States v. Harris (403 U. S. 573, supra), it is the type of statement that would not be made lightly, because of the obvious repercussions it could have on confederates or law enforcement officials (People v. Barcia, 37 A D 2d 612, app. dsmd. 30 N Y 2d 873).
*1057 An issue was raised as to whether or not there was, in fact, an informant. Detective Marsenison impressed me as being entirely truthful, honest and reliable. His deliberate and slow manner of answering was not a sign of creating a fabrication but an evident exercise of great care not to accidentally reveal the identity of the informant in a case where all the defendants were charged with an “A” felony, attempted murder, and possession of an arsenal of firearms. I accordingly find that the informant was reliable; that the underlying facts upon which the informant based his conclusions were reliable; that there is no requirement that the informant must have furnished prior reliable information to sustain a finding of reliability (United States v. Harris, supra; Draper v. United States, 358 U. S. 307, supra); that there was no misrepresentation, fraud or perjury in presenting the facts to Justice Bkust, and that the information supplied by the informant together with the information in the police records and. the personal observation of the police were sufficient to warrant a man of reasonable caution to believe that a wiretap of telephone bearing number FA 5-7516 would disclose evidence of trafficking in narcotics. The eavesdropping warrant was therefore issued upon probable cause.
I further find that there was no need to disclose the informant’s identity. There was sufficient evidence apart from the arresting officer’s testimony as to the informer’s communication to establish probable cause (People v. Malinsky, 15 N Y 2d 86; People v. Coffey, 12 N Y 2d 443) and justice and fair play, therefore, do not mandate the production of the informant (Roviaro v. United States, 353 U. S. 53). Nevertheless, Assistant District Attorney Cunningham offered to produce the informant for an ex parte in camera examination by the court, to which the defendants objected. Where as here, defendants are charged with serious crimes, the identity of the informant must be protected unless justice mandates otherwise, and for his protection and the ¡preservation of the State’s sources of information an in camera hearing is a prerequisite to any determination allowing the defendants to confront the informant (People v. Goggins, 42 A D 2d 227).
The next issue to be determined is whether the eavesdropping warrant itself is valid. The warrant was issued pursuant to section 819 of the Code of Criminal Procedure which is identical to CPL 700.30 in both wording and paragraph numbering. Paragraph 7 of both sections states that the order must contain : “ A provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a *1058 way as to minimize the interception of communications not otherwise subject to eavesdropping under this title ”.
Section 2518 (subd. [5]) of title 18 of the United States Code contains the same language. It is apparent on its face that the eavesdropping order before the court did not contain any such provision. This statute in derogation of the right to privacy guaranteed under the Fourth Amendment to the United States Constitution and section 12 of article I of the Constitution of the State of New York must be strictly construed. I find not only a violation of the statute but also constitutional infirmity under Desist v. United States (394 U. S. 244, 246) where the court held: “since every electronic eavesdropping upon private conversations is a search or seizure, it can comply with constitutional standards only when authorized by a neutral magistrate * * * under precise limitations and appropriate safeguards.”
In addition to omitting a minimization provision, the eavesdropping warrant does not contain the '“ identity of the person, if known, whose communications are to be intercepted” (CPL 700.30, subd. 2) or “ a particular description of the type of communications sought to be intercepted, and a statement of the particular designated offense to which it relates ” (CPL 700.30, subd. 4). It empowered and authorized the interception of “ any and all telephonic communications for the purpose of interception and obtaining evidence of the 'commission of violations of the Narcotic Laws of the State of New York and conspiracy to commit the same.”
Judge Mishler, in United States v. Vega (52 F. R D. 503 [EDNY, 1971]) dealt with an eavesdropping warrant containing wording almost identical with that in this case. I am in full accord with his reasoning in that case. The warrant, while it contained a minimization provision, did not contain the identity of the person, if known, whose communications were to be intercepted (CPL 700.30, subd. 2) ; or a particular description of the type of communications sought to be intercepted nor a statement of the particular designated offense to which it related (CPL 700.30, subd. 4). Judge Mishler found the warrant to be constitutionally defective.
The United States Supreme Court, in Berger v. New York (388 U. S. 41, supra) set down those minimal requirements which an eavesdropping statute must meet before it can be found valid. In effect, the Supreme Court states that in order to satisfy the Fourth Amendment requirements, a great deal of specificity of description is mandated. As a result, new sea *1059 tions 813-j to 825 were added to the Code of Criminal Procedure and the superseding article 700 of the 'Criminal Procedure Law continued to attempt to meet these standards. While the Supreme Court of the United States has not passed on the constitutionality of the post -Berger New York statute, I am firmly of the belief that it is the inclusion of the requirement of minimization and of particularity of description of the types of conversations to be overheard and the identity of the person whose conversations are to be overheard which renders this statute constitutional. Therefore, the People’s argument that the omissions in the eavesdropping warrant constitute harmless error is without merit. The mandatory provisions of the statute must be complied with and the failure to do so in this case renders the eavesdropping warrant null and void. All conversations intercepted thereunder were illegally intercepted and must be suppressed (see United States v. Tortorello, 480 F. 2d 764; United States v. Bynum, 475 F. 2d 832; Cross v. State, 225 Ga. 760; United States v. Vega, supra).
Were the eavesdropping order valid, there would be an issue of whether it was properly executed with respect to the requirement of minimization of eavesdropping. The police prepared logs of the overheard conversations which consisted of cursory notes and the monitor’s brief comments rather than an actual transcription of the conversations recorded on fifteen two-hour tapes. All the tapes were introduced into evidence and excerpts from the first six were played in open court. However, the reporter was unable to transcribe what was replayed and the procedure was virtually meaningless. I, therefore, directed that all the tapes be transcribed by the District Attorney’s office. Without such a transcript, it would be impossible to analyze the tapes. In that respect this case is virtually indistinguishable from People v. Colombo (24 A D 2d 505) where the Appellate Division directed a new trial because raw, untranscribed tape recordings had been introduced into evidence. Adequate review was impossible where the contents of the tapes did not constitute any part of the written record on appeal. The suggested procedure was to transcribe the tapes and distribute the prepared transcripts to counsel in advance of trial.
After examination of the transcripts, I find that there was no attempt at minimization. Every conversation was recorded. The People argue that even though all the conversations were recorded, not all of them were overheard. In addition, evidence *1060 was introduced that 75% of the overheard conversations were pertinent.
CPL 700.05 (subd. 3) defines an intercepted communication as “ a telephonic or telegraphic communication which was intentionally overheard or recorded ’ ’. It makes no distinction between overheard or recorded conversations, as the Federal statute does (U. S. Code, tit. 18, § 2510, subd. [4]) and CPL 700.30 (subd. 7) requires minimization of the intercepted communication without regard to whether or not it was actually overheard. The recording of all the conversations constitutes a violation of the statute (People v. Gastania, 73 Misc. 2d 166).
The next issue is whether the search warrant is valid. Since the information upon which, the search warrant was based was allegedly derived solely from the illegally intercepted conversation, the search warrant was also a nullity under the doctrine of the fruit of the poisonous tree, which was first expounded in Silverthorne Lbr. Co. v. United States (251 U. S. 385). See, also, Wong Sun v. United States, 371 U. S. 471; People v. Scharfstein, 52 Misc 2d 976.) While the usual situation involving the fruit of the poisonous tree doctrine is one in which evidence as such has been obtained as a result of an illegal action, here we have a search warrant obtained as a result of the illegally obtained telephonic evidence. However, the United States Supreme Court in Nardone v. United States (302 U. S. 379) held that what is obtained from illegally acquired evidence is suppressible in the same manner as the evidence itself. This is limited to an extent by the “ good sense ” or “ attenuation ” doctrine (Nardone v. United States, supra; Wong Sun v. United States, supra). This warrant is therefore suppressible under the fruit of the poisonous tree doctrine because it is derived solely from the tainted evidence obtained as a result of the void wiretap order.
Was the search of the premises nevertheless valid? A warrant may be found invalid; yet a search and seizure may be reasonable if there is an independent basis for a legal search and seizure notwithstanding the void search warrant (Silverthorne Lbr. Co. v. United States, supra; People v. Powell, 36 A D 2d 177, affd. 30 N Y 2d 634; People v. Montanaro, 34 Misc 2d 624). The most common situation, as here, is where there is a search incident to a lawful arrest (Jones v. United States, 357 U. S. 493; Keiningham v. United States, 287 F. 2d 126).
In this case, the police never had an opportunity to execute the warrant because a gun battle started and continued for 20 to 30 minutes prior to the search. Shots were fired from *1061 apartment 60 at 630 St. Nicholas Avenue, where the defendants were at the time. Meanwhile, two bodies had fallen six stories, apparently from the window of apartment 6C. After the gun battle was over, the officers had the right to enter the apartment and arrest the defendants and search the apartment for other participants who might ambush them or destroy evidence of the gun battle and possible homicide (United States v. Briddle, 436 F. 2d 4, cert. den. 401 U. S. 921). The probable cause to arrest the defendant without a warrant is so patent that it does not require discussion (see Brinegar v. United States, 338 U. S. 160).
Once legitimately in the apartment, the police had a right to seize evidence lying in open view (Coolidge v. New Hampshire, 403 U. S. 443). Further, when the police arrested the defendant Sturgis, he was pointing a loaded weapon at them. The police obviously had the right to arrest iSturgis and seize the weapon (United States v. Briddle, supra). The police then searched the entire apartment. While looking under a bed, they found a suitcase, which they opened, and found contraband therein.
In Chimel v. California (395 U. S. 752) the Supreme Court of the United States held that the lawful arrest of a defendant without an arrest or search warrant limited the permissible search area to the person of the defendant and the area from which he “might obtain weapons or evidentiary items” (395 U. S., at p. 766). However, the Court of Appeals in People v. Fitzpatrick (32 N Y 2d 499) held that the Chimel case does not require a narrow reading of the Fourth Amendment. In Fitzpatrick, the defendant was arrested after police entered his home without a warrant. He Iwas seized in a closet, handcuffed, taken out into a hall a few feet from the closet and advised of his rights. After questioning, the defendant told the police that the gun he had used was in the closet where he was found and a search of the closet revealed the gun, empty shells and some live rounds of ammunition. The Court of Appeals held the search for the gun valid, stating: “There was here no quality of ‘ rummaging at will ’ among the defendant’s effects at which the Fourth Amendment is aimed * * * And the fact that the police had handcuffed the defendant did not render the closet search unauthorized. As this court remarked in People v..Floyd (26 N Y 2d 558, 563), ‘ it is not at all clear that the ‘' grabbing distance ’ ’ authorized in the Chimel case is conditioned upon the arrested person’s continued capacity “to grab ” (32 N Y 2d, at p. 508.)
*1062 In this case, a ¡broad search without a warrant was permissible because of the exigent circumstances involved (see Coolidge v. New Hampshire, supra). The ‘‘ permissible scope of search ” is “as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape ” (Warden v. Hayden, 387 U. S. 294, 299). A gun battle had just gone on for about 20 to 30 minutes. In the apartment, in open view, the police saw various .types of armaments and ammunition as well as over three pounds of narcotics. In addition, a trail of white powder (presumably narcotics) led to the toilet bowl.
Approximately eight people were found in the apartment. Others might have been hiding elsewhere. Contraband too might have been secreted and an attempt made to destroy it. By virtue of the number of defendants and the fact that they had engaged in a long gunfight, the police had a right to search the entire apartment because of the ever present danger that a defendant would attempt to reach a secreted weapon. Therefore, it was perfectly proper for the police, when they found a suitcase under the bed, to open it to see if it contained weapons or contraband.
I find that the warrantless search was incidental to a lawful arrest and did not violate the Fourth Amendment rights of any of the defendants and that all of the contraband seized at the time is admissible against the defendants. The motion to ■ suppress the items seized in the apartment is, therefore, denied.