Gabrielli, J.
Defendant claims, on his appeal to this court, that the wire interception of his telephone was not conducted in accordance with the minimization requirement of CPL 700.30 (subd 7) and, therefore, the approximately 40 intercepted communications admitted at trial concerning defendant’s involvement in the distribution of narcotics should have been suppressed (see CPL 710.20, subd 2). As a corollary question, it is also argued that the failure of the Judge presiding at the minimization hearing to require the prosecution to provide a transcript of the tapes of all intercepted communications to the court and defense counsel constituted reversible error.
Following the issuance of an eavesdropping warrant, based upon the affidavit of Sgt. James HcNicholas, the supervisor of the investigation into defendant’s narcotics activities, a wiretap was placed on defendant’s telephone. On this appeal, the defendant does not challenge the validity of the eavesdropping warrant or the sufficiency of the affidavit upon which the issuance of the warrant was based.[1] The warrant along with three subsequent extensions (see CPL 700.40) authorized sur *247 veillance for a period of 120 days but surveillance was terminated after 107 days.
On defendant’s motion to suppress eavesdropping evidence (see CPL 710.20, subd 2), a hearing was held to determine whether the police officers involved in the electronic surveillance had complied with the minimization directive contained in the eavesdropping warrant as mandated by CPL 700.30 (subd 7). Sgt. McNicholas, the supervising officer, testified that while surveillance had been authorized for 2,880 hours, the eavesdropping was actually conducted for only 1,210 hours. He also testified that he received instructions from two Assistant District Attorneys that only communications of the defendant, Baxter Floyd, were to be intercepted and not those of any other person using the telephone, such as one Patricia Mitchell who was believed to reside at the address at which the subject telephone was located. He was also instructed to intercept only those communications involving the defendant which were pertinent to the crimes under investigation and that privileged communications, such as calls between the defendant and his attorney, priest or doctor were not to be intercepted. These instructions were relayed by the supervising officer to the police officers manning the eavesdropping apparatus. The general aim of the investigation was to determine the extent of the defendant’s role in the distribution and sale of narcotics and any narcotics-related crimes, the participation of any other persons such as dealers and buyers in such activity and the involvement of any government agencies. The procedures utilized during the period of surveillance were described in considerable detail. For most calls, the monitoring officers would intercept the calls for a brief 30- to 40-second interval in order to determine the pertinency of the call to the investigation. If the call was deemed nonpertinent because the defendant was not a party or because the call was innocent in nature, monitoring would cease and the recording device was turned off. If the duration of the call exceeded two to three minutes, the officers would once again monitor the call for a 30- to 40-second period to ascertain whether the parties to the conversation had changed and to redetermine the pertinency of the call. There was never any indiscriminate, automatic overhearing or recording of conversations and police officers were always present operating the monitoring and recording devices. Several calls not involving the defendant were recorded in their entirety but these were of very *248 short duration. The supervising officer also testified that at the inception of the investigation, for the first two or three weeks, when it was necessary to determine a pattern of usage, there was a greater degree of monitoring. Defendant presented no evidence at the minimization hearing but moved that the District Attorney be required to submit to the court and to the defendant transcripts of every conversation intercepted; this motion was denied, on the ground that the tapes of the intercepted conversations themselves had been made available to the defendant for inspection and transcription. The court then denied appellant’s motion to suppress the wiretap evidence, having concluded that the statutory directive to minimize interception of nonpertinent calls had been satisfied. The court specifically held that there was a good faith effort to minimize interception, and that the procedures established by the investigating authorities resulted in a minimization of interception of nonpertinent calls. The defendant proceeded to trial at which approximately 40 tape recordings evidencing defendant’s involvement in narcotics trade were admitted into evidence and he was convicted of the crimes of criminal possession and sale of dangerous drugs in the first, second and third degrees. He does not now challenge the sufficiency of the evidence supporting those convictions which were affirmed by an unanimous Appellate Division.
CPL 700.30 (subd 7) mandates that an eavesdropping warrant contain a "provision that the authorization to intercept * * * shall be conducted in such a way as to minimize the interception of communcations not otherwise subject to eavesdropping under this article”.[2] An "intercepted communication” is defined in CPL 700.05 (subd 3) as "a telephonic * * * communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment”. (Emphasis added.)
This case does not involve a claim that the eavesdropping warrant failed to include the talismanic language of CPL 700.30 that the interception of nonpertinent calls be minimized (see, e.g., United States v Manfredi, 488 F2d 588; People v Sturgis, 76 Misc 2d 1053; People v Kennedy, 75 Misc 2d 10; People v Holder, 69 Misc 2d 863). Rather, the issue presented *249 on this appeal is whether minimization was actually achieved and whether the surveillance procedures utilized by the monitoring police officers were adequate to insure that the smallest practicable number of calls not pertinent to the criminal enterprise under investigation were intercepted. Since previously we have had occasion to comment only briefly on this requirement (see People v Di Stefano, 38 NY2d 640, 651-652), this case affords an opportunity to discuss in depth the scope of the minimization directive.
The minimization requirement is founded upon the deep-rooted concern expressed by the Supreme Court in Berger v New York (388 US 41, 57) that, in investigations utilizing eavesdropping techniques, "no greater invasion of privacy * * * than was necessary under the circumstances” should be permitted (see, also, United States v Focarile, 340 F Supp 1033, affd sub nom. United States v Giordano, 469 F2d 522, affd 416 US 505). The requirement also has its underpinnings in the Fourth Amendment interdiction of unreasonable search and seizures and its mandate that search warrants contain provisions "particularly describing the place to be searched, and the persons or things to be seized.”[3] The court in Berger sought to prevent the expansion of eavesdropping warrants into full blown "general” warrants prohibited by the Fourth Amendment. The minimization requirement is designed to insure that the communications intercepted conform, as nearly as possible, to those subject to interception by the terms of the eavesdropping warrant (see Note, Post-Authorization Problems in Use of Wiretaps, 61 Cornell L Rev 92, 94-99).
Minimization does not necessarily require that all nonpertinent communications be free from interception in their entirety, for such a standard would be unrealistic and virtually impossible to satisfy (see United States v Bynum, 485 F2d 490, 500, vacated on other grounds 417 US 903). This is especially true in narcotics conspiracies where crime-related conversations may be prefaced by innocent "chatter” and, thus, in such cases, some minor degree of intrusion must take place before a determination of pertinency can be made (United States v Turner, 528 F2d 143, 156; United States v Armocida, 515 F2d 29, 42; United States v Bynum, supra; United States v Falcone, 364 F Supp 877, affd 505 F2d 478, cert den 420 US *250 955). Courts examining interceptions in retrospect cannot fairly expect government agents to be possessed of clairvoyant powers in foreseeing in advance the relevance of particular communications to the crimes under investigation (United States v Bynum, supra, p 502; United States v LaGorga, 336 F Supp 190, 196).
Minimization may be defined as a good faith and reasonable effort to keep the number of nonpertinent calls intercepted to the smallest practicable number (United States v Turner, supra; United States v Scott, 516 F2d 751, 757; United States v Quintana, 508 F2d 867, 875; United States v James, 494 F2d 1007, 1018, cert den sub nom. Tantillo v United States, 419 US 1020). The determination whether minimization has been achieved must be made on a case-by-case basis with regard to the scope and circumstances of the particular investigation under review (see United States v Turner, supra, p 156; United States v Cox, 462 F2d 1293, 1296; cf. Senate Rep No. 1097, 1968 US Code Congressional & Administrative News, p 2190). The government agents conducting the surveillance must have shown a "high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion” (United States v Tortorello, 480 F2d 764, 784). The burden lies with the People "of going forward to show the legality of the police conduct in the first instance” (People v Di Stef ano, 38 NY2d 640, 652, supra). This burden may be satisfied by demonstrating that procedures were established to minimize interception of nonpertinent communications and that a conscientious effort was made to follow such procedures (United States v Armocida, supra; United States v Quintana, supra; United States v Rizzo, 491 F2d 215, 218).
We hold that in the instant case the People have met their burden and the defendant has failed to rebut the prima facie showing that minimization procedures were established and complied with. Initially, we note that there was no constant, indiscriminate overhearing or recording of all conversations emanating from the subject telephone (compare People v Sturgis, 76 Misc 2d 1053, supra; People v Castania, 73 Misc 2d 166; People v Holder, 69 Misc 2d 863, supra).[4] Furthermore *251 the monitoring officers were given specific instructions to intercept only calls involving the defendant and only those calls which were pertinent to the investigation and not privileged (see United States v Turner, supra, p 157). The procedures followed by the officers demonstrate compliance with these instructions. If a call was made by an individual other than the defendant the officers monitored the conversation for a brief interval lasting only 30 to 40 seconds to assure that the defendant did not become involved and, if the call was prolonged, they would once again ascertain whether the original parties were "on the line” by monitoring the conversation for the same brief interval. It appears that the same procedure was followed for seemingly innocent calls involving the defendant. This procedure, known as the intrinsic method of minimization, was adequately tailored to protect the expectation of privacy of other persons using the subject telephone as well as the defendant (see United States v Scott, 516 F2d 751, 755, supra; United States v James, 494 F2d 1007, 1020, supra; United States v Bynum, 485 F2d 490, 500, supra; Commonwealth v Vitello, 327 NE2d 819, 844 [Mass]; see, also, Note, 61 Cornell L Rev 92, 121-122).
We note that the initial monitoring at the outset of the investigation of a greater number of calls was permissible to ascertain the pattern of usage for the telephone. As indicated, it has been recognized that in cases involving the sale and distribution of narcotics, subjects of the investigation are often sophisticated in the use of innocent language disguised as code and in other means of deception; furthermore, in the early stages of a wiretap, it may be necessary to establish the precise extent of the conspiracy and the identity of the participants and, thus, a greater degree of intrusion may be tolerated (see United States v Chavez, supra, p 494; United States v Quintana, supra, p 875; United States v Turner, supra, p 157).
In light of these procedures, some general guidelines with respect to minimization may be articulated. First, when the government is aware that only a single individual is, or a *252 known group of individuals are, involved in a possible crime, then only communications involving those individuals should be monitored. Where the investigation, however, is directed toward discovery of the participants of what appears to be a broad conspiracy, then the surveillance may be larger in scope in order to accomplish this objective, although steps should be taken to assure, to the extent possible, minimization of "innocent” conversations. Conversations of persons who are not targets of the investigation may be monitored for brief intervals to assure that their use of the phone is not a ruse to mask a suspect’s use of the phone or to convey information regarding the crimes being investigated (see, e.g., United States v Bynum, supra, where an unwitting babysitter was used to convey to participants information relating to a large scale narcotics conspiracy).
Calls between individuals who are both known targets of the surveillance are almost always subject to interception. As previously noted, in narcotics conspiracies innocent conversation may be interlaced with dialogue of a criminal nature or may perhaps itself be disguised to conceal discussion of criminal activity (see, e.g., United States v Bynum, 360 F Supp 400, 413-416; United States v King, 335 F Supp 523, 541). Where a conversation occurs between a known suspect and an individual who is not involved in the conspiracy, or whose possible involvement is unknown, great care must be taken to avoid interception of innocent conversation but monitoring officers should be permitted to make an on-the-spot determination of pertinency through a brief period of interception (see Note, 61 Cornell L Rev 92, 109).
Statistical evidence should be viewed with caution and while it is not in itself determinative of the minimization issue, it is relevant in evaluating the degree of compliance with procedures established to restrict the interception of nonpertinent calls (see United States v Armocida, 515 F2d 29, 42, supra; United States v Bynum, 360 F Supp 400, 410, 415, supra; United States v Focarile, 340 F Supp 1033, supra). Although it is not incumbent upon them to do so (see People v Di Stefano, 38 NY2d 640, 652, supra), the People here presented statistical evidence to support their position that minimization was achieved. The record shows clearly that, eliminating incomplete calls and recorded messages from consideration, approximately 85% of the telephone conversations initially monitored were minimized and approximately 6.5% of *253 nonpertinent conversations were not minimized. Of the 70 nonpertinent calls, approximately 18 are claimed to be of short duration.[5] The recordation of calls of short duration (less than two to three minutes) should be disregarded because of the difficulty of making a determination of pertinency in such a short period of time; indeed, one court has stated that brief calls do not lend themselves to minimization (United States v Bynum, 360 F Supp 400, 415, supra; accord United States v Scott, 516 F2d 751, 757, supra; United States v Armocida, supra, p 45). In sum, the small percentage of nonpertinent calls which were not minimized supports the People’s position that there was a reasonable and conscientious effort to comply with the procedures established to achieve minimization.
The defendant claims, not unpersuasively, that the Judge issuing the eavesdropping warrant should have required progress reports to be made to him during the 120-day interval over which surveillance was authorized. CPL 700.50 (subd 1) does not make progress reports mandatory but requires that "[s]uch reports shall be made at such intervals as the [issuing] justice may require.” Despite the precatory language of the statute, we think that the better practice is to require such reports to be made, especially where the surveillance extends over a rather long period of time as in the instant case. The preferred use of progress reports assures close judicial supervision of the execution of eavesdropping warrants and such supervision is strongly supportive of the claim that the minimization requirement has been satisfied (see United States v Armocida, supra, p 44; United States v Quintana, 508 F2d 867, 875, supra; United States v James, 494 F2d 1007, 1020, supra; United States v Bynum, 485 F2d 490, 500, supra). We therefore express our strong preference for judicial supervision of eavesdropping warrants by means of the statutorily authorized progress reports. Turning to the circumstances of the instant case, however, in light of the strong evidentiary showing that a reasonable and successful effort to minimize was made, we cannot conclude that the failure to require periodic progress reports should result in the suppression of the eavesdropping evidence.
A subsidiary claim advanced by defendant is that the hearing court erred in not directing the People to provide a *254 transcript of the tapes of intercepted conversations to the court and defense counsel. This claim is without merit. The tapes were made available to the defendant for transcription, and the hearing court had before it the tapes themselves as well as the daily logs kept by the monitoring officers describing the content of the conversations intercepted. We do not think that the People should bear the burden of providing a transcript of all interceptions to the defendant.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. A prior motion to suppress the wiretap evidence based on alleged infirmities in the eavesdropping warrant and the underlying affidavit was denied and the defendant does not dispute that determination on this appeal. The hearing court on that motion concluded that other normal investigative procedures reasonably appeared to be unlikely to succeed or too dangerous and that visual surveillance of the defendant’s narcotics activities had proved fruitless (see CPL 700.20, subd 2, par [d]).

. This provision is virtually identical to its Federal counterpart contained in subdivision (5) of section 2518 of the Omnibus Crime Control and Safe Streets Act of 1968 (US Code, tit 18, §§ 2510-2520).

. Thus, CPL 700.30 (subd 4) requires that an eavesdropping warrant contain, inter alia, "[a] particular description of the type of communications sought to be intercepted”.

. We do not, however, intimate that, where there has been interception of all or virtually all conversations, a per se violation of the minimization requirement has been made out. We agree with the reasoning of the Federal cases that when a large scale, far-flung conspiracy is in progress and the Government is seeking to discover the scope of the conspiracy and the identity of those involved, the interception of all *251 communications may be justified (see, e.g., United States v Chavez, 533 F2d 491; United States v Scott, supra; United States v Quintana, supra; United States v Bynum, supra; United States v Manfredi, supra; United States v Cox, supra). This accords with our view that compliance with the dictate of minimization must be adjudged on a case-by-case basis with due consideration to the nature and extent of the criminal enterprise under surveillance.

. This claim is based on entries from wire-bound notebooks maintained by the monitoring officers which describe generally the nature of intercepted conversations. The calls of short duration appear to be those to individuals who were not at home.